UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Lawrence C. Ogris, | Civil No. 16-465 (DWF/FLN) |
| Petitioner, | **ORDER &** |
| | **REPORT AND** |
| v. | **RECOMMENDATION** |
| Mark Dayton, Governor, | |
| Tom Roy, Comm. of Corr., | |
| Respondents. | |

_____

Lawrence C. Ogris, *pro se*, for Petitioner.
Peter R. Marker for Respondents.

_____

This matter came before the undersigned United States Magistrate Judge on Petitioner Lawrence C. Ogris's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 by a person in state custody (ECF No. 1), Ogris's motion to stay proceedings (ECF No. 15), and Respondents' motion to dismiss (ECF No. 8). The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons that follow, the Court recommends Ogris's Petition be **DENIED**, Respondents' motion be **DENIED as moot**, and this matter be **DISMISSED WITH PREJUDICE**. It is also ordered that Ogris's motion to stay is **DENIED**.

## I. BACKGROUND

Ogris is currently serving a 300-month sentence at the Minnesota Department of Corrections facility in Oak Park Heights, Minnesota, after a Ramsey County District Court jury found him guilty of second-degree criminal sexual conduct. *State v. Ogris*, No. A14-1008, 2015 WL 1959867, at *3 (Minn. Ct. App. May 4, 2015); Pet., ECF No. 1; Respondents' Mem. in Supp. of Mot. to Dismiss

3, ECF No. 9. The Court adopts the facts of this case as stated by the Minnesota Court of Appeals:

> [Ogris] was charged with second-degree criminal sexual conduct, in violation of Minn. Stat. § 609.343, subd. 1(c) (2012), after an incident in May 2013, when he met an 18–year–old high school senior, N.H., in a St. Paul skyway after school. [Ogris] complimented N.H. on his gauges (large earrings), introduced himself as "Lorenzo," and offered to smoke marijuana with N.H. [Ogris] offered the marijuana to N.H. for free, N.H. agreed to smoke it with [Ogris], and [Ogris] told N.H. that he knew of a place where they could smoke "and not get caught."
>
> [Ogris] and N.H. walked through the skyway and across the street to an apartment complex. The entrance to the apartment complex was secure and [Ogris] had no key. [Ogris] and N.H. waited for a person to exit, stopped the door from closing fully, and then entered the complex. [Ogris] and N.H. approached a stairwell and [Ogris] offered N.H. $100. [Ogris] and N.H. went to the bottom of a stairwell, where [Ogris] showed N.H. various pill bottles and offered N.H. a beer. N.H. accepted the beer and took a few sips of it. [Ogris] then pushed N.H. against the wall, using his forearm to press against N.H.'s throat.
>
> [Ogris] began to grope the front of N.H.'s pants. [Ogris] told N.H., "I'm gonna suck your dick, you're gonna suck my dick." [Ogris] also held an unknown cylindrical object to N.H.'s stomach. N.H. believed the object was a gun because [Ogris] threatened to shoot him. [Ogris] also told N.H. that he had a knife. At some point during the encounter, [Ogris] reached beneath N.H.'s clothes and grabbed N.H.'s bare penis and his bare buttocks. [Ogris] also pushed N.H. to the ground.
>
> After a struggle, N.H. managed to escape. He approached a stranger at a bus stop and asked to use that person's cell phone. He called the police. Officer Michael Matsen arrived 20 minutes later. N.H. told Officer Matsen what had happened. Officer Matsen told him "that a similar situation happened at a bar with possibly the same . . . guy, like exposing himself to someone at some bar in the area, like a bit ago." While Officer Matsen and N.H. were talking, Officer Matsen received a call about a man detained for theft by the security staff of the apartment complex where N.H. was assaulted. The description of the detained man matched N.H.'s description of his attacker. N.H. remained in Officer Matsen's squad car while the officer investigated the matter in the apartment complex.
>
> The state presented evidence at trial concerning [Ogris]'s detention at the apartment complex where N.H. was assaulted. [Ogris] had allegedly stolen a backpack. Within minutes of the report of the stolen backpack, the apartment complex's head of security spotted [Ogris] entering the third floor with a backpack that looked like the one reported stolen. He detained [Ogris]. When Officer Matsen arrived, he thought N.H.'s description of his attacker matched [Ogris] "exactly." Officer Matsen took [Ogris] into custody for theft and mentioned nothing about the reported sexual

assault. While [Ogris] was being escorted to a squad car, he spontaneously told Officer Matsen that "some weird white kid claimed [Ogris] raped him and [Ogris] told the kid to get away."

[Ogris] was placed in the back of a squad car, and Officer Matsen escorted N.H. to a location where he could see the squad car. A different officer removed [Ogris] from the back of the squad car and N.H. exclaimed, "Yes, that's him, that's him, that's the guy." N.H. became emotional.

Before trial, the state notified [Ogris] that it intended to offer evidence relating to another criminal sexual assault under Minn. R. Crim. P. 7.02. The assault occurred in December 2013, about six months after the charged offense. Before the jury was called in for voir dire on the first morning of trial, the district court heard arguments about the admissibility of evidence relating to this other incident. The state proposed to present testimony from a 20–year–old man, J.D., who, while attending his younger brother's birthday party at a hotel in Bloomington, was similarly assaulted by [Ogris]. The state expected J.D. to testify that [Ogris] was "hanging around" the hotel's pool and eventually walked over to J.D. and his family, inquiring whether they had seen a bag that he had lost. The state expected J.D. to testify that he went to a different area of the hotel and [Ogris] followed him. The state expected J.D. to testify that, in order to get away from [Ogris], J.D. entered the men's bathroom. The state expected J.D. to testify that [Ogris] followed him into the bathroom and that before J.D. knew he was there, [Ogris] grabbed him and "grabbed his penis, over his shorts." The state expected J.D. to testify that [Ogris] offered J.D. $100 not to say anything. The state told the district court that this assault was reported, [Ogris] was arrested, and he claimed that a "young man had approached him wanting to use drugs."

. . .

At trial, [Ogris] did not object to either the testimony regarding the stolen backpack, or to N.H.'s testimony that Officer Matsen had conveyed to him that [Ogris] may be the same person as a suspect in an indecent exposure case that occurred earlier that day.

*Ogris*, No. A14-1008, 2015 WL 1959867, at *1–3.

On direct appeal, Ogris argued that: (1) his trial counsel was ineffective, and (2) evidence of other bad acts—or "*Spreigl*" evidence—should not have been admitted at trial. *Ogris*, No. A14-1008, 2015 WL 1959867, at *3–6; ECF No. 1 at 3; *see State v. Spreigl*, 139 N.W.2d 167 (Minn. 1965). The Minnesota Court of Appeals rejected these claims and affirmed his conviction. *Ogris*,

No. A14-1008, 2015 WL 1959867, at *3–6. Specifically, the Minnesota Court of Appeals held that the trial court (1) did not abuse its discretion by admitting evidence that Ogris sexually assaulted another man after the charged incident, (2) that because Ogris failed to object to testimony that he stole a backpack at the apartment complex where the charged incident took place and that he may have been involved in an indecent exposure incident earlier that day, the admission of such testimony was not plain error. *Id.* The Minnesota Court of Appeals also concluded that Ogris's claim of ineffective assistance of counsel was unsupported by the record and therefore meritless. *Id.* at 6. The Minnesota Supreme Court denied further review on July 21, 2015. ECF No. 1 at 3; ECF No. 9 at 3.

In Ogris's Petition, he seeks habeas relief on the grounds that: (1) the district court erroneously admitted evidence of other bad acts or "404(b)" evidence, (2) Ogris was denied effective assistance of counsel, and (3) the court violated Ogris's due process rights during the sentencing phase. ECF No. 1 at 6–10. Ogris concedes in his Petition that only "[s]ome of the ineffective [assistance of counsel] claims were raised" on appeal and that he did not raise the due process claim on appeal because he only "[r]ecently became aware of [the] issue." *Id.* at 8, 10.

On March 3, 2016, the Court directed the Government to show cause why the Writ should not be granted. Order, ECF No. 6. Respondents filed a motion to dismiss the Petition contending that Ogris's claims are procedurally defaulted because they were "not presented to the Minnesota Supreme Court [as] federal constitutional claim[s]." ECF No. 9 at 7, 11.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standards that govern this Court's review of habeas corpus claims raised by state prisoners. The

4

relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court addressed the meaning of this statute, and how it should be applied by the federal district courts. The Court held:

> A state-court decision can be "contrary to" this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours. . . .
>
> Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id*. at 405, 413. The Court further explained the "unreasonable application" clause:

> A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id*. at 409, 411.

A writ of habeas corpus may also be available where the state courts' resolution of a case is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the state

5

court's judgment is based on findings of fact that could not reasonably be derived from the evidentiary record. *Id.* When reviewing a state court decision, however, a "federal court . . . presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000).

A federal district court does not conduct its own de novo review of a habeas petitioner's constitutional claims. Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts. Moreover, the petitioner must show that the state courts committed the type of error that is actionable under § 2254(d), as interpreted by *Williams*. Demonstrating actionable error requires that a petitioner, as a threshold matter, present a federal question in his petition for relief. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

### III.  CONCLUSIONS OF LAW

**A.    Ogris's Petition for Habeas Relief**

    **1.    Ineffective Assistance of Counsel and Due Process Violation Claims**

Ogris concedes that he did not raise all of his ineffective assistance of counsel claims or his due process claim on appeal. *See* Petitioners Mem. in Supp. of Pet. 7–8, ECF No. 2 (claiming that trial counsel was ineffective for failure to conduct pretrial investigation, consult with experts or treating physicians, and had a conflict of interest because he was simultaneously representing him in a civil case). Therefore, these claims have not been preserved for review in habeas.

Additionally, while Ogris contends that the Court's failure to order a physical or mental examination prior to sentencing violated his due process rights, "it is not the province of a federal

habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 67–68; *see also Evenstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006) ("Like the district court, we lack authority to review the Minnesota state courts' interpretation and application of state law."). Ogris has not explained how any possible sentencing error goes beyond an error of state law and implicates the U.S. Constitution or other federal law. Merely stating that the court's alleged duty under the Minnesota Sentencing Guidelines implicates his federal due process rights is insufficient to state a federal claim.

To the extent that Ogris's claims for ineffective assistance of counsel were raised on appeal, the Minnesota Court of Appeals reviewed Ogris's ineffective assistance of counsel claim consistent with the principles outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). To prove ineffective assistance of counsel, Ogris must show that (1) his counsel's representation was so deficient that it fell below the standards guaranteed to him under the Sixth Amendment, and (2) that Ogris was prejudiced by his counsel's errors. *Id.* at 687. The Minnesota Court of Appeals held that Ogris's claim was not supported by the record. *Ogris*, No. A14-1008, 2015 WL 1959867, at *6. Therefore, Ogris had not met his burden of proof under the first prong of *Strickland*. This decision was neither contrary to federal law nor based on an unreasonable determination of the facts.

Ogris is not entitled to federal habeas relief on his claims for ineffective assistance of trial counsel or that his due process rights were violated at sentencing.

### 2. Other Bad Acts Evidence Claim

The Minnesota Court of Appeals considered Ogris's other bad acts evidence claim under Minnesota Rule of Evidence 404(b) and *Spreigl*, 139 N.W.2d at 167, observing that "it is undisputed

that the state gave notice of its intent to introduce the other-acts evidence, and it identified the intended purpose of that evidence." *Ogris*, No. A14-1008, 2015 WL 1959867, at *3. The Minnesota Court of Appeals concluded that there was no abuse of discretion in admitting evidence that Ogris sexually assaulted another man after the charged incident. *Id.* at *4. The Minnesota Court of Appeals also stated that where Ogris did not object to testimony of theft or indecent exposure at trial, admission of this evidence did not affect his substantial rights under the plain-error test. *Id.* at *5–6.

Ogris appears to acknowledge that he raised his evidentiary objections under Minnesota state law and his claim centers on the discrepancy between the Minnesota Rule of Evidence 404(b) and the Federal Rule of Evidence 404(b). ECF No. 2 at 3–6 ("This court must inform Minnesota State courts by Pre-emption or otherwise that a test based on similarity gets the 404(B) [sic] rule backward!"). *Id.* at 5. This Court lacks the authority "to review the Minnesota state courts' interpretation and application of state law." *Evenstad*, 470 F.3d at 782. Ogris raised a state law evidence objection to the Minnesota Court of Appeals and then on appeal to the Minnesota Supreme Court. *See* ECF No. 1 at 3–4 (stating that the grounds raised to the Minnesota Supreme Court were the "same" as the grounds raised to the Minnesota Court of Appeals); *Ogris*, No. A14-1008, 2015 WL 1959867, at *3–4 (outlining Ogris's state evidentiary law claim).

Ogris also contends that the state courts' adjudication of his claim resulted in a decision contrary to clearly established federal law. ECF No. 1 at 6. Whether Minnesota Rule of Evidence 404(b) is unconstitutional, however, is raised here for the first time on habeas review. Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts.

Ogris's claim that other bad-acts evidence should not have been admitted at his trial was not

presented to the Minnesota Supreme Court as a federal constitutional claim. Therefore, the Court concludes that Ogris is not entitled to federal habeas relief on this ground.

**B.     Respondents' Motion to Dismiss**

Respondents bring a motion "under Rule 5 of the Rules Governing 28 U.S.C. § 2254 Cases . . . to dismiss the Petition for Writ of Habeas Corpus." Mot. to Dismiss, ECF No. 8. Rule 5 states in full:

> (a) **When Required**. The respondent is not required to answer the petition unless a judge so orders.
>
> (b) **Contents: Addressing the Allegations; Stating a Bar**. The answer must address the allegations in the petition. In addition, it must state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, or a statute of limitations.
>
> (c) **Contents: Transcripts**. The answer must also indicate what transcripts (of pretrial, trial, sentencing, or post-conviction proceedings) are available, when they can be furnished, and what proceedings have been recorded but not transcribed. The respondent must attach to the answer parts of the transcript that the respondent considers relevant. The judge may order that the respondent furnish other parts of existing transcripts or that parts of untranscribed recordings be transcribed and furnished. If a transcript cannot be obtained, the respondent may submit a narrative summary of the evidence.
>
> (d) **Contents: Briefs on Appeal and Opinions**. The respondent must also file with the answer a copy of:
>
>> (1) any brief that the petitioner submitted in an appellate court contesting the conviction or sentence, or contesting an adverse judgment or order in a post-conviction proceeding;
>>
>> (2) any brief that the prosecution submitted in an appellate court relating to the conviction or sentence; and
>>
>> (3) the opinions and dispositive orders of the appellate court relating to the conviction or the sentence.
>
> (e) **Reply**. The petitioner may submit a reply to the respondent's answer or other pleading within a time fixed by the judge.

Rules Governing Section 2254 Cases in the United States District Courts. Nowhere in Rule 5 does the Court find authority for Respondents to file a motion to dismiss a Petition after the Court has ordered them to show cause why the Writ should not be granted. ECF No. 6. Nonetheless, the Court concludes that Respondents' motion to dismiss and memorandum in support of the motion to dismiss provide a sufficient answer in accordance with Rule 5. In any regard, because the Court recommends that Ogris's Petition be denied on its merits, it also recommends that Respondents' motion to dismiss be denied as moot.

**C.     Ogris's Motion to Stay**

On July 1, 2016, Ogris filed a motion for a "stay and abeyance of the proceedings pending completion of Petitioner's Minn. Stat. [Section] 570.01[1] post-conviction proceedings to satisfy exhaustion requirements." Respondents included in their memorandum in support of their motion to dismiss that:

> The court in *Rhines* held that the United States District Courts retain their authority to issue a "stay and abeyance" in habeas cases to allow a petitioner to return to state court and exhaust unexhausted claims without running the risk of being barred by the applicable statute of limitations. A stay and abeyance should only be granted where the district court determines that there was good cause for the petitioner's failure to

---

[1]
> As a proceeding ancillary to a civil action for the recovery of money and to any action brought by the attorney general under the authority of section 8.31, subdivision 1, or any other law respecting unfair, discriminatory, or other unlawful practices in business, commerce, or trade, the claimant, at the time of commencement of the civil action or at any time afterward, may have the property of the respondent attached in the manner and in the circumstances prescribed in sections 570.01 to 570.14, as security for the satisfaction of any judgment that the claimant may recover. The order for attachment may be issued only by a judge of the court in the county in which the civil action is pending. All property not exempt from execution under the judgment demanded in the civil action is subject to attachment.
>
> Minn. Stat. Ann. § 570.01.

> exhaust his claims in state court, that the petitioner's unexhausted claims are not "plainly meritless," and that the petitioner has not engaged in dilatory tactics.

ECF No. 9 at 5 (citing *Rhines v. Weber*, 544 U.S. 269 (2005) (internal citations omitted)). The Court assumes that Ogris is referring to the rule articulated in Respondents' memorandum and in *Rhine*. However, the Court does not find good cause for Ogris's failure to raise all of his claims on appeal in state court. The Court also recommends that Ogris's Petition should be denied. Indeed, it appears to the Court from the filing of this motion that Ogris acknowledges that his grounds for habeas relief have not been exhausted. Ogris's motion for a stay and abeyance is denied.

## IV. ORDER

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Ogris's motion to stay (ECF No. 15) is **DENIED**.

## V. RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) be **DENIED**, and this matter be **DISMISSED WITH PREJUDICE**.

2. Respondents' Motion to Dismiss (ECF No. 8) be **DENIED as moot**.

DATED: December 5, 2016

*s/Franklin L. Noel*
FRANKLIN L. NOEL
United States Magistrate Judge

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a

copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.